# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 17-460V
(Filed: November 3, 2020)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | |
| MARIAH CORBETT, *on Behalf of* N.C., *Deceased*, | * * * | UNPUBLISHED |
| Petitioner, | * * * | Decision on Interim Attorneys' Fees and Costs; Reasonable Basis |
| v. | * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * * * | |
| Respondent. | * * | |
| * * * * * * * * * * * * * * | | |

*Mark Sadaka, Esq.*, Mark T. Sadaka, LLC, Englewood, NJ, for petitioner.
*Voris Johnson, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On March 30, 2017, Mariah Corbett ("Ms. Corbett" or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 et seq.[2] ("Vaccine Act" or "the Program") on behalf of her deceased minor child, N.C. Petitioner alleges that N.C. received diphtheria-tetanus-acellular pertussis ("DTaP"), hepatitis B, inactivated poliovirus ("IPV"), pneumococcal conjugate, haemophilus influenzae b ("Hib"), and rotavirus vaccination on February 29, 2016, and "suffered shortly thereafter vaccine-induced sudden death that was either "caused-in-fact" by the above-stated vaccination(s) or, in the alternative, a result of

---

[1] Although this Decision has been formally designated "unpublished," it will nevertheless be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id*.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

a significant aggravation of a preexisting condition." Petition, ECF No. 1. Petitioner now requests an award of interim attorneys' fees and costs.

## I. Procedural History

The petition was filed on March 30, 2017. ECF No. 1. An Amended Petition ("Am. Pet.") was filed on March 31, 2017, clarifying that N.C. "died less than 48-hours [after receiving the allegedly causal vaccinations] on March 2, 2016." Am. Pet. at 2, ECF No. 6.

Petitioner filed medical records through July 2017 and filed a Statement of Completion on July 18, 2017. *See* Petitioner's Exhibits ("Pet. Ex.") 1-5, ECF No. 7; Pet. Ex. 6, ECF No. 10; Pet. Ex. 7, ECF No. 11. Petitioner filed her affidavit on August 21, 2017. ECF No. 13.

Respondent filed his Rule 4(c) Report ("Resp. Rpt.") on August 31, 2017, recommending against compensation in this matter. ECF No. 14. Petitioner was ordered to file an expert report in support of her claim. Non-PDF Order, issued Aug. 31, 2017.

On December 6, 2017, petitioner filed a Motion to Issue Subpoena on the Horry County Coroner's Office in order to obtain additional evidence relating to N.C.'s autopsy. ECF No. 18. Petitioner's Motion was granted. ECF No. 19.

On January 5, 2018, petitioner filed a Motion to Issue Subpoena on the Horry County Police Department in order to obtain the police reports and other evidence related to the police investigation into N.C.'s death. ECF No. 20. Petitioner's Motion was granted. ECF No. 21.

After requesting and receiving four extensions of time, petitioner filed an expert report from Dr. Miller, a neuropathologist, on May 8, 2018. *See* Motion for Extension of Time ("MFET"), ECF No. 17; Non-PDF Order, issued Nov. 29, 2017; MFET, ECF No. 22; Non-PDF Order, issued Jan. 26, 2018; MFET, ECF No. 23; Non-PDF Order, issued Feb. 26, 2018; MFET, ECF No. 24; Non-PDF Order, issued Apr. 26, 2018; Pet. Ex. 9, ECF No. 25.

On August 30, 2018, respondent filed expert reports and supporting medical literature from Dr. MacGinnitie, an immunologist, and Dr. Alexandrescu, a neuropathologist, on August 20, 2018. Resp. Ex. A-B, ECF No. 27; Resp. Ex. C-D, ECF No. 28.

A status conference was held on October 10, 2018. During the conference, it was noted that both Dr. Miller and Dr. Alexandrescu opined that there are several deficiencies in N.C.'s autopsy; notably, tissue samples were only taken from the liver, kidney, and lungs, and a full exam of the brain was not conducted. Scheduling Order at 1, ECF No. 29, citing Pet. Ex. 9 at 5; Resp. Ex. C at 5-6. Petitioner's counsel was asked how he intended to proceed, in light of the lack of information provided by the autopsy report. *Id*. Petitioner's counsel advised that he planned to obtain an expert opinion and report, if appropriate, from an immunologist and a supplemental report from Dr. Miller before having a discussion with his client on how to proceed in this matter. *Id*. It was further noted that the records were inconsistent regarding the location of N.C.'s body. *Id*. The fire rescue report stated that N.C. was sleeping in a crib; however, the police report stated

that N.C. was co-sleeping in his parents' king size bed. *Id.*, citing Pet. Ex. 6 at 2; Pet. Ex. 7 at 1. Petitioner's counsel agreed that he needed to clarify this information with his client. *Id.*

Petitioner's counsel filed a status report ("Pet. S.R.") on January 8, 2019, stating that he was working with petitioner to clarify N.C.'s sleeping arrangement. Pet. S.R., ECF No. 33.

In petitioner's next status report, filed on February 22, 2019, counsel did not address this issue but asked for a stay until the Federal Circuit issued a decision in *Boatman v. Sec'y of Health & Human Servs.*, which was pending at the time. Pet. S.R., ECF No. 36.

Subsequently, petitioner filed two motions to stay the proceedings, which were granted. *See* ECF Nos. 38-41. This matter was stayed for the full 180 days permitted under the Vaccine Rules, until September 5, 2019; however, the Federal Circuit did not issue a decision in *Boatman* before the stay expired. *See* ECF No. 41; Vaccine Rule 9(b).

On October 7, 2019, petitioner filed a status report stating that she intended to rely on the two reports authored by Dr. Miller which she has already filed and would not be filing additional reports. Pet. S.R., ECF No. 45. Petitioner requested that, if issues pertinent to this matter were addressed in the Federal Circuit's forthcoming decision in *Boatman*, she be permitted to file reports to address these issues or that a status conference be held. *Id.*

An Order was issued on October 8, 2019, highlighting multiple fact issues in this matter. Scheduling Order at 1, ECF No. 46. It was noted that there were multiple inconsistencies between the fire rescue/EMS report and the police report in addition to the issue of N.C.'s sleeping position. *Id.* The fire rescue/EMS report reflected that petitioner stated that N.C. was last seen alive around 2:00 am for a bath and feeding. *Id.*; Pet. Ex. 6 at 2. The police report reflected that N.C.'s father reported that he woke up around 5:30 am and N.C. was fine, but when petitioner woke up between 8:00 am and 9:00 am, N.C. was unresponsive. *Id.*; Pet. Ex. 7 at 1. It was further noted that petitioner's affidavit stated that N.C. woke up around 2:00 am for a feeding and went back to sleep swaddled in his blanket on his back. *Id.* at 2; Pet. Ex. 8 at 2. She affirmed that she later awoke mid-morning and found N.C. on his side in his bassinet, unresponsive. *Id.* The parties were ordered to file a joint status report advising how they intended to proceed in light of the factual issues discussed. *Id.*

On October 29, 2019, petitioner filed a Motion for Interim Attorneys' Fees and Costs.[3] ECF No. 47. Respondent filed a response on November 4, 2019. ECF No. 48. Petitioner filed a reply later that day. ECF No. 49.

On November 7, 2019, the Federal Circuit issued a decision in *Boatman v. Sec'y of Health & Human Servs.*, 941 F.3d 1351 (Fed. Cir. 2019).

On November 22, 2019, petitioner filed a Motion for Extension of Time until December 22, 2019, to file her status report. MFET at 1, ECF No. 50. Petitioner advised that the parties had been in deposition arrangements, but, in light of the Federal Circuit's decision in *Boatman*,

---

[3] After filing the instant application for fees, petitioner filed a Motion to Strike her previous fee application. *See* ECF No. 56. This motion was granted. *See* ECF No. 58.

petitioner requested additional time in order to determine how she intended to proceed. *Id*. Petitioner's motion was granted. Non-PDF Order, issued Nov. 22, 2019.

On December 23, 2019, petitioner filed a second Motion for Extension of Time until January 22, 2020. MFET at 1, ECF No. 51. Petitioner advised that she was still discussing with her counsel and family on how she wished to proceed and needed additional time. *Id*. Petitioner's motion was granted. Non-PDF Order, issued Dec. 23, 2019.

On January 22, 2020, petitioner filed a third Motion for Extension of Time until March 23, 2020. MFET at 1, ECF No. 52. Petitioner's counsel advised that, despite several attempts, he had been unable to reach petitioner. *Id*. He requested time to contact petitioner and to file either a Motion for Decision on the Record or a Motion to be Relieved as Counsel. *Id*. Petitioner's Motion was granted. Non-PDF Order, issued Jan. 23, 2020.

On March 23, 2020, petitioner filed a fourth Motion for Extension of Time until April 22, 2020. MFET at 1, ECF No. 53. Petitioner's counsel advised that he was still unable to reach petitioner. *Id*. He requested additional time in order "to reach client, provide her with Court resource information for self-represented litigants and if we fail to hear from her file our motion to be relieved as counsel." *Id*. An Order was issued granting petitioner's motion and requiring petitioner's counsel to file either a Motion to be Relieved as Counsel, a Motion for a Ruling on the Record, or a Motion for a Dismissal Decision by April 22, 2020. Order at 1, ECF No. 54.

On March 26, 2020, petitioner's counsel filed a Motion for Interim Attorneys' Fees and Costs. ECF No. 55. The next day, petitioner's counsel filed a Motion to Withdraw as Attorney of record, advising that "despite numerous calls and correspondence warning petitioner that her failure to respond would result in our request to be relieved as counsel, petitioner's counsel has been unable to reach petitioner." Motion at 1, ECF No. 57. On April 3, 2020, petitioner's counsel filed a status report advising that he had been contacted by petitioner. Pet. S.R. at 1, ECF No. 59. Petitioner advised her counsel that she intended to find another attorney. *Id*. Counsel provided updated contact information for petitioner. *Id*.

Respondent filed a response to petitioner's application for fees on April 10, 2020. Response, ECF No. 61. Respondent "defer[red] to the Special Master to determine whether or not petitioner has met the legal standard for an interim fees and costs award…and the statutory requirements for an award of attorney's fees and costs under 42 U.S.C. 300aa-15(e)(1)(A)-(B)." *Id*. at 2. Later that day, petitioner's counsel filed a reply, reiterating his request for an award of interim attorneys' fees and costs. ECF No. 62. On May 28, 2020, petitioner filed a Motion to Supplement her Motion for Interim Attorneys' Fees and Costs; complete billing and invoice records were attached. *See* Motion to Supplement, Ex. C-D, ECF No. 63. Ultimately, petitioner requested $32,043.43 in attorneys' fees and $6,864.80 in attorneys' costs, for a total of $38,908.23.[4] *See* Motion for Interim Fees, Ex. A at 2-3; Ex. C at 15, 17.

---

[4] Counsel did not advise whether petitioner incurred any out-of-pocket expenses. If petitioner did incur any out-of-pocket expenses, she may move for reimbursement once this matter has concluded.

4

On May 29, 2020, an Order was issued for petitioner to file a supplemental to her motion that addressed reasonable basis. Scheduling Order at 1, ECF No. 64. Respondent was ordered to file a response. *Id*.

On July 28, 2020, petitioner filed a supplemental brief ("Supp. Brief") addressing reasonable basis. ECF No. 65. Petitioner submitted that her claim has reasonable basis at the time of filing because the special master's decision in *Boatmon*, No. 13-611V, 2017 WL 3432329 (Fed. Cl. Spec. Mstr. July 10, 2017), had found that certain vaccines "were a substantial contributing factor in bringing about the death of a baby like" N.C. Supp. Brief at 4. The petitioner in this matter used the same expert, Dr. Miller, as the petitioners in *Boatmon* and proceeded on the same theory; therefore, the petitioner had reason to believe that Dr. Miller's theory "was not only reasonable, but also a persuasive theory to at least one special master." *Id*. Petitioner further submitted that her claim continued to have reasonable basis post-*Boatmon*. Petitioner noted that respondent's expert, Dr. Alexandrescu "suggested that N.C.'s] death could have been the result of chronic inflammation found in his lungs." *Id*. at 4 n.1. Petitioner submitted that, despite the ruling in *Boatmon*, she could "refine her theory and bring forth an immunology expert to say that the combination of chronic inflammation in [N.C.'s] lungs and the vaccines he received was a substantial contributing factor…." *Id*. at 4 n.2.

On September 18, 2020, respondent filed a response to petitioner's supplemental brief. ECF No. 66. Respondent advised that he did "not contest that petitioner established a reasonable basis for her claim up through the time that the Federal Circuit issued its opinion in *Boatmon v. HHS*, 941 F.3d 1351 (Fed. Cir. 2019)," nor did he "object to reasonable fees and costs for winding down the case." Response at 1. However, respondent "reserve[d] the right to object to any future application [for] fees and costs in this case." *Id*.

This matter is now ripe for determination.

## II. Applicable Law

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petition results in compensation, petitioner is entitled to reasonable attorneys' fees and costs ("fees" or "fee award"). *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). Where a petitioner does not prevail on entitlement, a special master has discretion to award reasonable fees if the petition was brought in "good faith" and with a "reasonable basis" for the claim to proceed. § 15(e)(1). A petitioner's good faith is presumed "in the absence of direct evidence of bad faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). Where no evidence of bad faith exists and respondent does not challenge petitioner's good faith, good faith requires no further analysis.

Reasonable basis is an objective inquiry, irrespective of counsel's conduct or looming statute of limitations, that evaluates the sufficiency of petitioner's available medical records at the time a claim is filed. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017); *see Turpin v. Sec'y of Health & Human Servs.*, No. 99-564, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005). A special master's evaluation of reasonable basis is to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted

with sufficient objective evidence to make a feasible claim for recovery. *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121 at *7 (Fed. Cl. 2018). Reasonable basis is satisfied when available objective evidence, such as medical records or medical opinions, support a feasible claim prior to filing. *See Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)); *see Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 405 (2012). Where causation is a necessary element to petitioner's claim, petitioner must provide some objective support of a causal relationship between administration of the vaccine and the petitioner's injuries in order to establish that a claim was feasible. *See Bekiaris v. Sec'y of Health & Human Servs.*, 140 Fed. Cl. 108, 114 (2018).

Determination of feasibility is limited to the objective evidence submitted, *Santacroce*, 2018 WL 405121 at *7, but a special master is not precluded from considering objective factors such as "the factual basis of the claim, the novelty of the vaccine, and the novelty of the theory of causation."*Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018). In *Cottingham*, the Federal Circuit expressly clarified that special masters are permitted to utilize a totality of the circumstances inquiry in evaluating reasonable basis, including, but not exclusively limited to, objective factors such as those identified in *Amankwaa. See Cottingham ex. rel. K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020). The Court reiterated that counsel conduct is subjective evidence, not to be considered when evaluating reasonable basis. *Cottingham*, 971 F.3d at 1345.

While incomplete records do not strictly prohibit a finding of reasonable basis, *Chuisano*, 116 Fed. Cl. at 288, an overwhelming lack of objective evidence will not support reasonable basis. *See Simmons*, 875 F.3d at 634-36 (holding that reasonable basis was not satisfied where 1) petitioner's medical record lacked proof of vaccination and diagnosis and 2) petitioner disappeared for two years prior to filing a claim). Additionally, a petitioner's own statements are not "objective" for purposes of evaluating reasonable basis and cannot alone support reasonable basis. *See, e.g., Chuisano*, 116 Fed. Cl. at 291; *Foster v. Sec'y of Health & Human Servs.*, No. 16-1714V, 2018 WL 774090, at *3 (Fed. Cl. Spec. Mstr. Jan. 2, 2018). A claim may lose reasonable basis as it progresses, if further evidence is unsupportive of petitioner's claim. *See R.K. v. Sec'y of Health & Hum. Servs.,* 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Hum. Servs.,* 33 F.3d 1375, 1376-77 (Fed. Cir. 1994)).

Despite broad discretion, a special master may not abuse their discretion in denying reasonable basis and fees. The Federal Circuit articulated, "failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion" by the special master. *Cottingham*, 971 F.3d at 1345. The petitioner in *Cottingham* submitted an affidavit, a vaccine package insert, and several medical records showing that petitioner suffered adverse reactions listed on the package insert after receiving the vaccine. *See id.* at 1345-46. The Court found that the materials constituted such objective evidence that denying reasonable basis because of "no evidence" was clearly erroneous. *Id.* at 1346-47. Denial of reasonable basis for lack of causation in *Cottingham* constituted an abuse of discretion. *Id.* at 1347. The Court reminded that the burden of proof required for reasonable basis is not as high as that required for causation—"more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds

6

for a special master to find reasonable basis." *Id.* at 1346. However, the Court held that the special master may make factual determinations as to the weight of evidence. *Id.* at 1347.

## III. Analysis

### A.    Reasonable Basis

The parties do not dispute that this matter maintained reasonable basis up until the Federal Circuit issued its decision in *Boatmon*. Additionally, respondent has indicated that he has no objection to fees and costs incurred in "wrapping up" the case. *See, e.g., Swick v. Sec'y of Health & Human Servs.*, No. 13-526V, 2018 WL 6009290, at *6 (Fed. Cl. Spec. Mstr. Oct. 22, 2018) (finding that petitioners' counsel "should be compensated for a short amount of time used to wrap up the case"). After *Boatmon* was issued, petitioner's counsel secured time for petitioner to determine how she wished to proceed; this was complicated by counsel's difficulty in communicating with petitioner and petitioner's apparent lack of responsiveness to counsel's attempts at communication. *See* Motion to Withdraw at 1. However, counsel filed his Motion to Withdraw as counsel as soon as practicable. Accordingly, I find that this claim maintained reasonable basis until *Boatmon* was issued, and the remainder of the costs and fees incurred are related to counsel's work "wrapping up" the case.

### B.    Availability of Interim Fees

Special masters have discretion to award interim fees while the litigation is ongoing if "the cost of litigation has imposed an undue hardship" and there is "a good faith basis for the claim." *Shaw v. Sec'y of Health & Human Servs.*, 609 F. 3d 1372, 1375 (Fed. Cir. 2010); *see Avera v. Sec'y of Health & Human Servs.*, 515 F. 3d 1343, 1352 (Fed. Cir. 2008). The court in *Avera* held that interim fees may be awarded "in appropriate circumstances." *Id.* at 1351. The court then listed some circumstances—cases involving "protracted" proceedings and "costly experts"—in which it would be "particularly appropriate" to award interim fees. *Id.* at 1352. But "the Federal Circuit in *Avera* . . . did not enunciate the universe of litigation circumstances which would warrant an award of interim attorney's fees," *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 154 (2012), and "special masters [retain] broad discretion in determining whether to award" them, *Al-Uffi ex rel. R.B. v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *5 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). In making this determination, "the special master may consider any of the unique facts of a case." *Rehn v. Sec'y of Health & Human Servs.*, 126 Fed. Cl. 86, 94 (2016).

Interim attorneys' fees have been found to be appropriate under the Vaccine Act due to a number of circumstances, including when petitioner's counsel plans to withdraw from the case. *Woods*, 105 Fed. Cl. at 154 (affirming that interim fees may be granted when counsel withdraws from the case and petitioner continues to pursue the case, which would otherwise require petitioner's withdrawing counsel to wait for an unknown end date of litigation); *see, e.g., Davis v. Sec'y of Health & Human Servs.,* No. 15-277V, 2016 WL 3999784, at *3 (Fed. Cl. Spec. Mstr. July 5, 2016) (finding it appropriate to award interim fees for the petitioner's attorney who was withdrawing from the case); *Becker v. Sec'y of Health & Humans Servs.,* No. 13-687, 2014 WL

4923160, at *7 (Fed. Cl. Spec. Mstr. Sept. 11, 2014) (noting that other special masters and the Court of Federal Claims have found the withdrawal of counsel can constitute an undue hardship).

Petitioner's counsel has advised that petitioner intends to pursue her claim either *pro se* or with the assistance of another attorney. Pet. S.R. at 1. Petitioner's counsel has also had some communication difficulties with petitioner; in his Motion to Withdraw, filed on March 27, 2020, petitioner's counsel noted that he had spoken to petitioner in "late December 2019" but had been unable to reach her since, despite numerous calls and correspondence." Motion at 1. Under these circumstances, I find that withdrawing counsel may face undue hardship in getting petitioner's cooperation at the end of this matter. I therefore find that resolving counsel's attorneys' fees and costs at this time is warranted.

## C.    Reasonable Hourly Rate

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[5]

---

[5] The fee schedules are posted on the Court's website. *See* Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016*, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys - Forum-Rate-Fee-Schedule2015-2016.pdf (last visited Nov. 3, 2020); Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2017*, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2017.pdf (last visited Nov. 3, 2020); Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2018*, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule %202018.pdf (last visited Nov. 3, 2020); Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2019*, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule %202019.pdf (last visited Nov. 3, 2020); Office of Special Masters, *Attorneys' Form Hourly Rate Fee Schedule: 2020*, http://uscfc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202 020.PPI_OL.pdf (last visited Nov. 3, 2020).

Petitioner requested the following hourly rates for the work of her counsel, Mr. Mark Sadaka: $337.05 for work performed in 2013, $350.00 for work performed in 2014 and 2015, $362.95 for work performed in 2016, $376.38 for work performed in 2017, $396.00 for work performed in 2018, $405.00 and $406.00 for work performed in 2019, and $422.00 for work performed in 2020. Motion for Interim Fees, Ex. A at 2; Ex. C at 15. With the exception of the rate of $406.00 requested for some work in 2019, these rates are consistent with what Mr. Sadaka has previously been awarded for his Vaccine Program work, and the undersigned finds them to be reasonable herein. Mr. Sadaka's requested rate of $406.00 will be reduced to $405.00, as is consistent with previous awards. *See, e.g, Allard v. Sec'y of Health & Human Servs.*, No. 14-442V, 2020 WL 5407810, at * 2 (Fed. Cl. Spec. Mstr. Aug. 5, 2020). Therefore, attorneys' fees are reduced by $9.60.[6]

## D.      Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal. *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

The overall hours spent on this matter appear to be reasonable. Upon review, the billing entries adequately describe the work done on the case and the amount of time spent on that work. None of the entries appear objectionable, nor has respondent identified any entries as objectionable. Accordingly, petitioner is awarded attorneys' fees in the amount of $32,033.83.

---

[6] Mr. Sadaka billed 9.60 hours at $406.00. $406.00 x 9.6 = $3,897.60. $405.00 x 9.6 = $3,888.00. $3,897.60 - $3,888.00 = $9.60.

**E.      Reasonable Costs**

Petitioner requests a total of $6,864.80 in attorneys' costs. Motion for Interim Fees, Ex. A at 3; Ex. C at 16-17. The requested costs consist of $6,000.00 in expert fees to Dr. Miller, the $400.00 filing fee, $213.48 in costs associated with obtaining medical records, $147.99 in costs for subpoena service, and $103.34 in shipping and mailing costs. The undersigned finds that most of these costs were reasonable and supported with adequate documentation. However, petitioner did not provide documentation for $15.00 in mailing costs and therefore cannot be reimbursed for those costs. Accordingly, petitioner is therefore awarded $6,849.80 in interim costs.

## IV. Total Award Summary

Based on the foregoing, petitioner's Motion for Interim Attorneys' Fees and Costs is **GRANTED**. Accordingly, I award **$38,883.63,** representing $32,033.83 in attorneys' fees, and $6,849.80 in attorneys' costs, in the form of a check payable jointly to **petitioner and petitioner's counsel, Mark Sadaka.** The clerk shall enter judgment accordingly.[7]

**IT IS SO ORDERED.**

<u>s/ Mindy Michaels Roth</u>
Mindy Michaels Roth
Special master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.